Good morning, Your Honors. May it please the Court, my name is Diana Chamberlain and I represent the petitioner Timothy Francis in this case. Timothy is here on the far side of the bench along with his family. This case is about the torture and persecution that the Singapore government... I'm sorry, can you speak a little louder or get closer to the microphone? This case is about the torture and persecution that the Singapore government will inflict on Timothy if he is forced to return to Singapore. I'd like to start with his application for protection under the Convention Against Torture. In this case, the agency denied the application for failure to satisfy the burden of more likely than not. However, the agency committed clear factual errors in reaching this decision. Is that enough? Our standard of review is extremely rigorous. We can grant a petition only if the evidence compels a contrary conclusion. It can't just be that there's some good stuff on the other side. That's correct, Your Honor. The evidence must compel the conclusion. In this case, the clear errors that were made by the board evidence that substantial evidence did not support their factual findings. Most particularly with respect to the expert witness, they said that his opinion was that torture was a real possibility or just a real likelihood. In actuality, what he said is that when the government learns of Timothy's objections to caning as a form of punishment, that he will most likely be caned. That I would expect them to cane him. Didn't he also say that whether it was torture or not would have to be determined on a case-by-case basis? He did say that, Your Honor, and his opinion was that in this case that a caning sentence in addition to a prison sentence would amount to torture. I read it differently than that. It seemed to me that it was more equivocal. Yes, it could be, but it might not be, and so how can we say it's more likely than not? That is, even assuming that you demonstrated that caning would occur, just assuming that. The expert did not say it depended on the nature of the clothing and how many strokes and all kinds of things that are completely unknowable and unproved. He did acknowledge, Your Honor, that those conditions would be taken into consideration in the case-by-case basis, but his ultimate conclusion was that a caning sentence in addition to an already significantly lengthy prison sentence is imposed merely to degrade, to humiliate, to punish for his opinion as being against caning. But that's speculative, too, isn't it, in terms of even if he was sentenced to prison, how long it would be? On that part, it could be up to 10 years, but, Your Honor, yes, it is unknown at this point exactly how long the prison sentence would be. There is evidence in the record that in other cases it was generally at least two to three years of a prison sentence. The caning sentence would then be on top of that. There is no precedent, is there, as to exactly what type of caning constitutes a cruel, unusual punishment or torture or anything like that, right? Doesn't it depend on, you know, the type of caning, the type of cane, how many lashes and so forth? Your Honor, that's correct, that there is no case that I have been able to find here in the United States that indicates whether caning constitutes torture. So this would be a question of first impression. As I think Judge Graber's questioning intimated, the record here is not too strong, you know, on making a case because, first of all, he hasn't been sentenced. We don't know what kind of caning is involved. There's something in the record about military caning being different from, what would you call it, judicial caning. And, you know, I suppose part of it would depend on the sentence, the actual sentence. And we know none of that, do we? What we do know, Your Honor, is what the Singapore Military Code indicates, which is that he could have up to 24 lashes, that it would be in addition to a prison sentence. Could but doesn't have to. That's correct, Your Honor. It's a possibility. But what the expert was very clear about is that, in his opinion, once the Singapore government knows that Timothy has been objecting to going back because he opposes caning and is afraid of caning, that in this tit-for-tat mentality that is rampant in the Singaporean culture and government, that they would impose that caning sentence to punish him for his opinion and for his fighting. That sort of folds into the claim on withholding, because the agency also found that there was no nexus to a protected ground, including political opinion or imputed political opinion. That's correct. So your argument also seems to require that we would overturn that, because your argument is that because of his political opinion, which the agency found it wasn't because of, so I guess they seem to run together a little bit. And that would lead into my next argument, Your Honor, that the agency committed clear error and that substantial evidence did not support that finding either. They wholly ignored. Okay, again, that's not the standard is whether the evidence compels us to reverse the factual finding, not anything less than that. But if substantial evidence does not support that factual finding, then it cannot stand. And in this case, both the BIA and the immigration judge completely ignored the expert's testimony that the additional sentence of caning will be imposed because of his imputed political opinion. They never discussed that at all in any of their decision-making process, that because they will learn of his opposition to caning, that is why they will impose the caning sentence. Thus, it takes it beyond. Do I understand correctly that the expert did not say that the caning in and of itself was torture, that he said if it was added to a prison sentence, then it was no longer punishment, the only purpose was humiliation? Yes, Your Honor. He indicated that the caning sentence, when it was imposed in addition to a prison sentence, is what constitutes torture because that sole purpose, again, is to degrade, to humiliate, to punish. Turning back to the withholding argument, because the agency wholly ignored the evidence in the record of a mixed motive, their application of the one central standard reason for asylum also constituted clear error. Actually, what they found was not that there was an un-central nexus, but no nexus at all. That was their finding, that any punishment that would occur would be because of desertion from the military and not because of a political opinion. So they found no nexus, as I understand it. They did find no nexus, Your Honor, and that was clear error because they ignored the evidence in the record of a mixed motive. While a prison sentence initially could have no nexus because it's for a lawful sanction for a violation of law, once they add on that caning sentence and retribution for his political opinion, at that moment it becomes a mixed motive. And they are motivated. Is that really correct? I mean, let's suppose, and this is not your client's case, but let's suppose that someone, you know, robbed a bank and then fled the country where they had robbed the bank, and we know that the punishment in that country for robbing a bank is very harsh. Do we look at that as being constituting a protected ground? I mean, I understand that it plays into the Catt claim, but I don't understand how it relates to any kind of motivation. Well, Your Honor, if they were merely punishing him for committing a crime, that would not be persecution under our law because it's not related to a protected ground. But once the punishment becomes a pretext for persecution, then it's protected. As this Court said in Fisher that there's two exceptions to lawful prosecution. One is a severely disproportionate punishment or pretextual prosecution. I'm sorry, but what's the protected ground here for this IAM claim? His imputed political opinion, Your Honor. For being against caning, you know, he's making statements as against a policy of the government. They would impute an anti-government political opinion to him for his anti-caning statements by fighting this case for so many years. Did you wish to save any rebuttal time? I would, thank you, Your Honor. You have about a minute left. Thank you. Thank you. May it please the Court in all use for the government. I would like to focus on the Court's initial statements regarding the standard review here. That is an important focus of the determination of this petition for review. As Judge Graber indicated, the record must compel reversal of the agency's findings. And I do not believe the petitioner has demonstrated that the record does such. You know, I know the Supreme Court said that. Many of our cases parrot that, but that's just the converse of saying it's not supported by substantial evidence, right? What's the difference? Oh, I think, yeah, I guess the substantial evidence standard is, I guess, in other words, the record must compel reversal. In other words, if we conclude that substantial evidence, you know, there's no substantial evidence to support the BIA's finding, then that's, we don't have to, you know, there's no magic words in saying it compels us to so-and-so, right? The way I understand it is that the interpretation of kind of how the courts have defined substantial evidence is, in other words, record compelling reversal of the agency's determination. Same thing. Yeah. So I would like to focus on the torture claim as well. And specifically, as was discussed during the petitioner's time, that this claim is a speculative claim, and the petitioner has to demonstrate a chain of events that are more likely than not to occur should he, in order to establish that he would be subjected to treatment that would constitute, that he would more likely than not be subjected to treatment that would constitute torture. More likely than not, that's for the withholding claim? That's for the torture claim. They're both, I guess, under the withholding. Torture claim, all right, go ahead. Yes. So in order for the petitioner to, I believe his expert defined what would constitute his torture would be the individual would be subjected to caning in a certain manner as well as being subjected to imprisonment. So that's how his expert identified what would constitute his torture. We can apply reasonable inferences here, can't we? For example, the Singapore military hasn't shown any interest in him since 2008. But if he goes back to Singapore, it seemed to me a reasonable inference that they will show interest in him. Isn't that correct? I disagree, Your Honor. I believe that the significant passage of time, the lack of any interest, any evidence, again, the burden of proof here is on the petitioner to marshal evidence to show that it's more likely than not to occur, and he'd have to show that it's more likely than not that he would indeed come to the attention of the Singapore military, be arrested, and then subjected to prosecution. The last we've heard, that last contact with his family from the Singapore military, with him at all, is from 2008. And the significant passage of time, I believe, would in fact necessarily reduce the likelihood of any attention paid to him. Additionally, there is no evidence. The petitioner conceded that there was no warrants for his arrest, no pending criminal charges that he was aware of. So that in itself shows that whether or not he is likely to be prosecuted is also unclear. It doesn't appear that he demonstrated more likely than not. And then we'd have to go to the next step. He would have to show that if he was prosecuted, that he would ultimately be convicted as a military deserter. He would have the opportunity to have legal representation. He would have the opportunity to present defenses. He basically admits he was a deserter. That is correct, but he's also in any – but he would also be able to present defenses and explain himself of why he may have left. For example, I think what was raised during the proceedings was he stayed here in order to look after his mother. So he could ostensibly raise that as a defense. And he would have opportunities for appeal. So again, he'd have to demonstrate this, that that would more likely than not occur. And then I think what was discussed earlier, would caning be the punishment assessed? It is just one of the many forms of punishments that are assessed for military desertions, but it's not mandated. There's no indication that – there's nothing in the evidence to demonstrate, for example, the petitioner was unaware of anyone who had been subjected to caning as a result of military desertion. Part of the reason for that, the secrecy of it, there's reference in the record to 2,200-plus judicial canings in a year, but there are no statistics for military. Yes, that's correct. It's based on the secrecy. But also, again, the burden of proof is with the petitioner to demonstrate that the military conducts itself in the same – the judicial canings, the percentages that occur or the numbers also occur in the military. Again, that's on the petitioner to demonstrate that he would be convicted and sentenced to a punishment of caning. His own expert indicated that he was unaware of any cases where an individual, a military deserter, was subjected to caning. And so we have this – and then – so even if he were administered for caning, if sentenced to caning, there were still more processes that have to occur. Again, as I'm trying to demonstrate, there's kind of a speculative chain of events the petitioner has to establish that are more likely than not to occur. We need his prosecution. We need him to be convicted and sentenced to caning and then the caning to be administered because there's still more – there's appeals and further processes that must occur for a caning to be administered. And then he would have to also be subjected to imprisonment, which would then meet his expert's definition of what would constitute torture. And his expert also said that not every caning constitutes torture. I believe so, Your Honor. And so this chain of events, I don't believe the petitioner has demonstrated, is more that the record compels reversal of the agency's conclusion that they would be more likely than not occur. So you want us to affirm on the idea that he can't prove that it's more likely true than not that he would be caned and consequently we would not be the first court to address the question of whether torture violated the Eighth Amendment. So in terms of when relating to whether caning would constitute torture? Right. Yeah, I believe the agency did not address that issue. It didn't, and you're asking us to do the same thing, not address it. Yes, the agency should have the first instance in addressing that sort of determination. They disposed this case on the more likely than not aspect of his claim. So let me be sure I understand your position. The BIA held that the petitioner failed to show that it was more likely than not that he would be subjected to caning at all. And if we were to disagree with that, what you're saying is we would have to remand to the agency to determine whether the nature of caning, if it occurred, was such that it fit within the CAT definition. That is correct, Your Honor. That is our position. Under Ventura and Thomas. Yes, Your Honor. If there's no further questions on the torture claim, I'd just like to address a few points on the withholding. The petitioner indicated that there was a political opinion or there would be a nexus to harm. It wouldn't be that he would just simply be subjected to treatment, punished for military desertion. It would be because of this imputed political opinion of his opposition of caning. The fact of the matter is there's no evidence in the record to show that he held that opinion, or let alone that the persecutor here, which would be, I guess, the Singapore military, would be in any way aware of his political opinion, imputed political opinion, whatever it may be. Focus here on, in this regard, just whether it's his opinion, does there have to be an identifiable group that espouses such an opinion, or can it be a group of one? It would be there's a political opinion in whether or not he's a member of a particular social group. I think he identified himself as a member of a particular social group of military deserters who opposed caning. I think they kind of bleeded together. There are two separate claims. One is political opinion, and nobody else has to hold your political opinion to have one and to be persecuted for having one. But social group requires a whole bunch of other stuff. Yes, and the record is absent any evidence that he either espoused any political opinion or was a member of a social group. But most importantly, the focus of these claims are on what the persecutor was motivated by to harm the individual based on his protected characteristics. We don't have any evidence in the record to show that the government of Singapore, the Singapore military, is in any way aware of his political opinion or membership in any social group, and therefore any harm he may experience that he did not demonstrate would be on account of a protected ground. And if there are no further questions? I don't believe so. Thank you, Counselor. Thank you so much, Your Honors. Ms. Chamberlain, you have a minute or so left. Thank you, Your Honors. I would like to address the point that the evidence in this case compels the conclusion that it is more likely than not that Timothy will be tortured in Singapore. First of all, the evidence in the record establishes that caning sentences are often handed down in Singapore, that there's a culture that accepts caning as appropriate forms of punishment, and when that sentence is handed down, it's meted out 92% of the time in civilian cases. There's no dispute that Timothy is AWOL and a deserter from the military. There's no dispute that he's subject to prosecution, and there's no dispute that the available sentence is a prison sentence of up to 10 years and an additional caning sentence. This court in Nauru applied a reasonable assumption to find it's more likely than not that this chain of events will occur when an individual is in this situation. Then you add on the expert's testimony that he believes it will be very likely that Timothy will be caned, that he most likely will be caned. Then you have the country conditions evidence that a caning sentence is carried out at least more than 90% of the time. This meets the more likely than not standard. Finally, turning back to Timothy's imputed political opinion, it's infinitely easy for the Singapore government to learn of his political opinion. A simple Google search of Timothy Francis finds this oral argument, finds that he's fighting for asylum to return to Singapore. They will likely ask him in the prosecution, why did you not come back for so long? He will tell the truth. They will know what his imputed political opinion is, and it is more likely than not that they will add a caning sentence in retribution and in punishment because they're hostile to that political opinion. Thank you, counsel. Thank you very much. The case just argued is submitted, and we appreciate the arguments of both counsel.
judges: Tashima, Graber, Mihm